IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **IRVING ADRIAN HERRERA**, **MARIO HERRERA**, and **ALEXANDER GARCIA**, on behalf of themselves and all other employees similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>**AZTECAS MUFFLERS AND BRAKE SHOP, INC.**, an Illinois corporation, **AZTECAS MUFFLERS AND BRAKE SHOP IV INC.**, an Illinois corporation, **AZTECAS MUFFLERS AND BRAKE SHOP V INC.**, an Illinois corporation, **AZTECAS MUFFLERS AND BRAKE SHOP VI INC.**, an Illinois corporation, **AZTECAS MUFFLERS AND BRAKE SHOP VII INC.**, an Illinois corporation, **AZTECAS MUFFLERS AND BRAKE SHOP VIII INC.**, an Illinois corporation, **AZTECAS MUFFLERS AND BRAKE SHOP II INC.**, a dissolved Illinois corporation, and **OSCAR MARTINEZ**, individually,<br><br>Defendants. | Civil Action<br><br><br><br><br>No.<br><br><br><br><br><br><br><br><br><br><br>JURY DEMAND |

## COMPLAINT

By and through their attorneys of record and on behalf of themselves and all other similarly situated employees, known and unknown, the plaintiffs, IRVING ADRIAN HERRERA, MARIO HERRERA, and ALEXANDER GARCIA, (the "Plaintiffs") hereby complain of the defendants, AZTECAS MUFFLERS AND BRAKE SHOP, INC., an Illinois corporation, AZTECAS MUFFLERS AND BRAKE SHOP IV INC., an Illinois corporation, AZTECAS MUFFLERS AND BRAKE SHOP V INC., an Illinois corporation, AZTECAS MUFFLERS AND BRAKE SHOP VI INC., an Illinois corporation, AZTECAS MUFFLERS AND BRAKE SHOP VII

INC., an Illinois corporation, AZTECAS MUFFLERS AND BRAKE SHOP VIII INC., an Illinois corporation, AZTECAS MUFFLERS AND BRAKE SHOP II INC., a dissolved Illinois corporation, and OSCAR MARTINEZ, individually, (collectively the "Defendants"). Pleading hypothetically and in the alternative, the Plaintiffs allege as follows:

## I. <u>INTRODUCTION</u>

1. This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a result of the Defendants' failure to pay the Plaintiffs and other similarly situated employees of the Defendants (the "Collective Class") time and one-half compensation for the overtime (in excess of 40 in any given week) hours they worked. In Count I, the Plaintiffs bring claims pursuant to Section 216(b) of the FLSA.

2. In Count II, the Plaintiffs bring supplemental claims under the Illinois Minimum Wage Law, 829 ILCS 105/1 *et seq.* and, in Count II supplemental claims under the Chicago Minimum Wage Ordinance ("CMWO") Chicago Municipal Code (Ill.) § 1-24-010 *et seq*.

## II. <u>THE PARTIES</u>

3. The Plaintiffs are all individuals who are domiciled in Illinois and who reside within the Northern District of Illinois.

4. The defendant, OSCAR MARTINEZ, is an individual who is domiciled in Illinois and who resides within the Northern District of Illinois.

5. The defendant, AZTECAS MUFFLERS AND BRAKE SHOP, INC. ("AZTECAS"), is an Illinois corporation whose registered office is located at or near 1215 S. Central Avenue, Cicero, IL 60804.

2

6.      The defendant, AZTECAS MUFFLERS AND BRAKE SHOP IV INC. ("AZTECAS IV"), is an Illinois corporation whose registered office is located at or near 2328 S. Central Avenue, Suite 1, Cicero, IL 60804.

7.      The defendant, AZTECAS MUFFLERS AND BRAKE SHOP V INC. ("AZTECAS V"), is an Illinois corporation whose registered office is located at or near 2328 S. Central Avenue, Suite 1, Cicero, IL 60804.

8.      The defendant, AZTECAS MUFFLERS AND BRAKE SHOP VI INC. ("AZTECAS VI"), is an Illinois corporation whose registered office is located at or near 2328 S. Central Avenue, Suite 1, Cicero, IL 60804.[1]

9.      The defendant, AZTECAS MUFFLERS AND BRAKE SHOP VII INC. ("AZTECAS VII"), is an Illinois corporation whose registered office is located at or near 2328 S. Central Avenue, Suite 1, Cicero, IL 60804.[2]

10.      The defendant, AZTECAS MUFFLERS AND BRAKE SHOP V INC. ("AZTECAS VIII"), is an Illinois corporation whose registered office is located at or near 2328 S. Central Avenue, Suite 1, Cicero, IL 60804.

11.      The defendant, AZTECAS MUFFLERS AND BRAKE SHOP II INC. ("AZTECAS II"), is a dissolved Illinois corporation whose registered office is, or was, located at or near 16514 S. 118th Place, Orland Park, IL 60467.

---

[1] Incorrectly listed in the Illinois Secretary of State's corporations database as "2823 S. Central Avenue, Suite 1, Cicero, IL 60804."

[2] Also Incorrectly listed in the Illinois Secretary of State's corporations database as "2823 S. Central Avenue, Suite 1, Cicero, IL 60804."

12.     At all times relevant to this action, the defendant, OSCAR MARTINEZ, is or was an owner, shareholder and/or stakeholder of: a) AZTECAS; b) AZTECAS II; c) AZTECAS IV; d) AZTECAS V; e) AZTECAS VI; f) AZTECAS VII; and g) AZTECAS VIII.

13.     At all times relevant to this action, the defendant, OSCAR MARTINEZ, is or was the president of: a) AZTECAS; b) AZTECAS II; c) AZTECAS IV; d) AZTECAS V; e) AZTECAS VI; f) AZTECAS VII; and g) AZTECAS VIII.

14.     Upon information and belief, at all times relevant to this action, the defendant, OSCAR MARTINEZ, is or was the sole shareholder of: a) AZTECAS; b) AZTECAS II; c) AZTECAS IV; d) AZTECAS V; e) AZTECAS VI; f) AZTECAS VII; and g) AZTECAS VIII.

15.     Upon information and belief, at all times relevant to this action, the defendant, OSCAR MARTINEZ, is or was the sole corporate officer of: a) AZTECAS; b) AZTECAS II; c) AZTECAS IV; d) AZTECAS V; e) AZTECAS VI; f) AZTECAS VII; and g) AZTECAS VIII.

16.     At all times relevant to this action, the defendant, OSCAR MARTINEZ, had and has the power to hire and fire employees of: a) AZTECAS; b) AZTECAS II; c) AZTECAS IV; d) AZTECAS V; e) AZTECAS VI; f) AZTECAS VII; and g) AZTECAS VIII.

17.     At all times relevant to this action, the defendant, OSCAR MARTINEZ, had and has the power to set the work schedules of the employees of: a) AZTECAS; b) AZTECAS II; c) AZTECAS IV; d) AZTECAS V; e) AZTECAS VI; f) AZTECAS VII; and g) AZTECAS VIII.

18.     At all times relevant to this action, the defendant, OSCAR MARTINEZ, had and has the power to set the manner, method and rate of pay for the employees of:

a) AZTECAS; b) AZTECAS II; c) AZTECAS IV; d) AZTECAS V; e) AZTECAS VI; f) AZTECAS VII; and g) AZTECAS VIII.

### III.  JURISDICTION AND VENUE

19.     Federal question jurisdiction is conferred on this Court by Section 16(b) of the FLSA and 28 U.S.C. §1331.

20.     Venue is proper as the acts or omissions that gave rise to the claims alleged herein occurred within this judicial district.

21.     Further, venue is proper pursuant to 28 U.S.C. § 1391, because the Defendants each have their principal place of business at or near 16514 S. 118th Place, Orland Park, IL 60467.

### IV.  COLLECTIVE ACTION UNDER THE FLSA

22.     The Plaintiffs bring this case as a Collective action under the FLSA on behalf of themselves and all known and unknown similarly situated employees (the "Collective Class"), and in accord with Section 16(b) of the FLSA, the Plaintiffs have each given written consent to bring such an action (attached as group **Exhibit A**).

23.     The Collective Class is defined as: **all current and former employees of the Defendants who: a) were paid in cash; b) worked roughly the same number of hours each week; c) were nonetheless paid a different (fluctuating) amount of money each week; and d) have worked more than 40 hours in at least one week.**

### V.  GENERAL ALLEGATIONS

24.     AZTECAS, AZTECAS II, AZTECAS IV, AZTECAS V, AZTECAS VI, AZTECAS VII and AZTECAS VIII are constituent parts of a fully integrated business (the "Auto Repair Business").

25.     At all times relevant to this action, the Auto Repair Business has been engaged in the business of providing automotive repair services to the general public.

26.     As of the date this action was filed, the Auto Repair Business's website reads at the top of its home page "Aztecas Mufflers and Brakes" and "Complete Auto Repair Service", and lists "Chicago, Cicero, Berwyn and Oak Forest" in the upper right-hand corner of the same page.  (http://www.aztecasmufflersandbrakes.com/) (accessed 5/8/20).

27.     As of the date this action was filed, the Auto Repair Business's website lists ten locations: a) 5165 W. Grand Avenue, Chicago, IL 60639; b) 1801 S. Cicero, Cicero, IL 60804; c) 4852 S. Archer Avenue, Chicago, IL 60632; d) 6420 W. Ogden Avenue, Chicago, IL 60402; e) 1215 S. Central Avenue, Cicero, IL 60804; f) 5209 W. 159th Street, Oak Forest, IL 60452; g) 3230 W. 47th Street, Chicago, IL 60632; h) 8458 S. Pulaski Road, Chicago, IL 60652; i) 3050 W. 59th Street, Chicago, IL 60629; and j) 7743 S. Cicero Avenue, Chicago, IL 60652.  (http://www.aztecasmufflersandbrakes.com/locations) (accessed 5/8/20).

28.      As of the date this action was filed, the Auto Repair Business's website reads "Our trained technicians have been with *our family of shops* for years, for years and provide quality service to every customer through *our company*."
(http://www.aztecasmufflersandbrakes.com/ase-automotive-service-excellence)
(accessed 5/8/20) (emphasis added).

29.     At all times relevant to this action, the Auto Repair Business held itself out to the general public as a fully integrated business that offered, and offers, standardized services and pricing to customers at any one of the ten locations listed on its website.

30.     At all times relevant to this action, Auto Repair Business was and is managed centrally by OSCAR MARTINEZ from his home office located at or near 16514 S. 118th Place, Orland Park, IL 60467.

31.     At all times relevant to this action, the following corporate entities were or are constituent members of the Auto Repair Business: a) AZTECAS, b) AZTECAS II, c) AZTECAS IV, d) AZTECAS V, e) AZTECAS VI, f) AZTECAS VII and g) AZTECAS VIII.

32.     Upon information and belief, at all times relevant to this action, additional corporate entities were part of the Auto Repair Business.

33.     At all times relevant to this action, the business entities identified above in paragraphs 31 and 32 above (the "Corporate Entities") have been dominated by OSCAR MARTINEZ.

34.     OSCAR MARTINEZ operated, and operates, the Corporate Entities as if they constitute a single company that he controls completely, moving money, goods, resources and employees between and among the various Corporate Entities at his choosing.

35.     Upon information and belief, at all times relevant to this action, the respective control groups (or de facto control groups) of the Corporate Entities have consisted of substantially the same, if not an identical, group of individuals that include OSCAR MARTINEZ and/or his family members.

36.     Upon information and belief, at all times relevant to this action, the respective administrative staffs of all or most the Corporate Entities have consisted of substantially the same, if not an identical, group of individuals.

37.     Upon information and belief, at all times relevant to this action, the records of all or most of the Corporate Entities have generally been kept in the same, central

location (*e.g.*, at OSCAR MARINEZ's home office, located at or near 16514 S. 118th Place, Orland Park, IL 60467).

38.    Upon information and belief, at all times relevant to this action, the Defendants used the same computer, computer network or server to keep the books of all or most of the Corporate Entities.

39.    Upon information and belief, at all times relevant to this action, the respective sets of data, which constitute the books of all or most of the Corporate Entities, have resided on the same computer, computer network or server.

40.    Upon information and belief, at all times relevant to this action, the same individual, or group of individuals, has/have performed the routine, day-to-day bookkeeping functions of all or most of the Corporate Entities.

41.    The Auto Repair Business had gross receipts in excess of $500,000.00 in: a) 2015; b) 2016; c) 2017; d) 2018; e) 2019; f) the twelve-month period between and including April 1, 2019 and March 31, 2020.

42.    One or more of the following statements is true:

    a.  AZTECAS had gross receipts in excess of $500,000.00 in: a) 2015; b) 2016; c) 2017; d) 2018; e) 2019; f) the twelve-month period between and including April 1, 2019 and March 31, 2020;

    b.  AZTECAS IV had gross receipts in excess of $500,000.00 in: a) 2015; b) 2016; c) 2017; d) 2018; e) 2019; f) the twelve-month period between and including April 1, 2019 and March 31, 2020

    c.  AZTECAS V had gross receipts in excess of $500,000.00 in: a) 2015; b) 2016; c) 2017; d) 2018; e) 2019; f) the twelve-month period between and including April 1, 2019 and March 31, 2020;

    d.  AZTECAS VI had gross receipts in excess of $500,000.00 in: a) 2015; b) 2016; c) 2017; d) 2018; e) 2019; f) the twelve-month period between and including April 1, 2019 and March 31, 2020;

8

e. AZTECAS VII had gross receipts in excess of $500,000.00 in: a) 2015; b) 2016; c) 2017; d) 2018; e) 2019; f) the twelve-month period between and including April 1, 2019 and March 31, 2020;

f. AZTECAS VIII had gross receipts in excess of $500,000.00 in: a) 2015; b) 2016; c) 2017; d) 2018; e) 2019; f) the twelve-month period between and including April 1, 2019 and March 31, 2020; and/or

g. OSCAR MARTINEZ had gross receipts in excess of $500,000.00 in: a) 2015; b) 2016; c) 2017; d) 2018; e) 2019; f) the twelve-month period between and including April 1, 2019 and March 31, 2020.

43. At all times relevant to this action, the Auto Repair Business employed a structure in which one or two business entities formed the nucleus of a group interrelated and integrated companies.

44. Upon information and belief, at all times relevant to this action, one of the following Corporate Entities was the nucleus of the Auto Repair Business, and is the vehicle by which OSCAR MARTINEZ supplied business infrastructure services to the other Corporate Entities: a) AZTECAS; b) AZTECAS II; c) AZTECAS IV; d) AZTECAS V; e) AZTECAS VI; f) AZTECAS VII; g) AZTECAS VIII; or h) another Corporate Entity.

45. Upon information and belief, at all times relevant to this action, the telephone, internet, information technology, marketing and advertising services used by all of the Corporate Entities were procured or paid for by only one of the following Corporate Entities: a) AZTECAS; b) AZTECAS II; c) AZTECAS IV; d) AZTECAS V; e) AZTECAS VI; f) AZTECAS VII; g) AZTECAS VIII; or h) another Corporate Entity.

46. Upon information and belief, the computer software and hardware used to process all of the Corporate Entities' payroll and tax records was procured or paid for by only one of the following Corporate Entities: a) AZTECAS; b) AZTECAS II; c) AZTECAS IV; d)

9

AZTECAS V; e) AZTECAS VI; f) AZTECAS VII; g) AZTECAS VIII; or h) another Corporate Entity.

47.     Upon information and belief, at all times relevant to this action, certain personnel whose wages were paid with checks drawn on accounts held by only one of the Corporate Entities, acted in the interests of the Auto Repair Business as a whole – for example, personnel who were paid with checks drawn on AZTECAS's accounts processed payroll and tax documents for AZTECAS IV and/or vice versa.

48.     At all times relevant to this action, on a day-to-day basis OSCAR MARTINEZ: a) directed the Plaintiffs' work and that of the Collective Class members; b) set the Plaintiffs' work schedules and those of the Collective Class members; and c) had direct control over the Defendants' human resources and payroll functions relative to the Plaintiffs and the Collective Class members.

49.     At all times relevant to this action, the Auto Repair Business operated, controlled and/or constituted an "enterprise" within the meaning of Section 3(r) of the FLSA.

50.     The Plaintiffs were employed by one or more of the Defendants[3] from about March, 2016 until about July, 2018.

51.     During the course of their employment by the Defendants, the Plaintiffs worked as auto mechanics.

_____

[3] "Plaintiffs plausibly contend that they are unable at this time to specifically identify their employer(s) given the number of individuals and entities involved in the project and the fact that they did not receive pay stubs or other documentation in connection with their employment." *Sanchez v. Haltz Const. Inc.*, 2012 U.S. Dist. LEXIS 537, 2-3.  Here, the Plaintiffs were paid cash and were not given pay stubs, and were told they worked for "Aztecas," "Aztecas Mufflers and Brakes," and other "Aztecas" entities.  From the Plaintiff's perspective, the worked for OSCAR MARTINEZ doing substantially the same jobs at all of the Defndants' locations during the course of their employment.

52.     The Defendants allowed and assigned the Plaintiffs to perform automotive repair services at the several locations listed on the Defendants' website (see above); the Defendants moved the Plaintiffs around to their various locations as they saw fit in order to accommodate the shifting business and workload of the Auto Repair Business.

53.     In particular, the Defendants allowed the Plaintiffs to work at their automotive repair shops located at or near: a) 1215 S. Central Avenue, Cicero, IL 60804; b) 1801 S. Cicero Avenue, Cicero, IL 60804; c) 3050 W. 59th Street, Chicago, IL 60629; and d) 5165 W. Grand Avenue, Chicago, IL 60639.

54.     On many occasions, the work that the Plaintiffs performed for the Defendants was performed within the City of Chicago.

55.     At all times relevant to this action, the Defendants, and each of them, were the Plaintiffs' "employer" within the meaning of Section 3(a) and (d) of the FLSA in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

56.     At all times relevant to this action, the Defendants, and each of them, were the Plaintiffs' "employer" within the meaning of Section 3(c) of the IMWL in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

57.     At all times relevant to this action, the Plaintiffs were "employees" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

58.     At all times relevant to this action, the members of the Collective Class were/are "employees" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

59.     At all times relevant to this action, the Plaintiffs were "employees" of the Defendants within the meaning of Section 3(d) of the IMWL.

60.     At all times relevant to this action, the Plaintiffs were "covered employees" within the meaning of Section 1-24-010 of the CMWO.

61.     At all times relevant to this action, the Defendants, and each of them, were the Plaintiffs' "employer" within the meaning of Section 1-24-010 of the CMWO.

62.     During the course of their employment by the Defendants, the Plaintiffs and the Collective Class members handled/handle goods that moved in interstate commerce including but not limited to petroleum products, brake pads, brake rotors, oxygen/acetylene, tires, mufflers and catalytic converters.

63.     During the course of their employment by the Defendants, the Plaintiffs and the Collective Class were/are not exempt from the maximum hour (overtime) provisions of the FLSA, the IMWL and/or the CMWO.

64.     During the course of their employment, the Plaintiffs worked an average of 58 hours per week: they typically worked 6 days per week (Monday through Saturday) (8:00 a.m. to 6:00 p.m. Monday through Friday; 7:00 a.m. to 5:00 p.m. on Saturday).

65.     The Defendants encouraged and allowed the Plaintiffs to work through their lunch breaks and eat while working; the Plaintiffs did so on all but the most rare occasions.

66.     Occasionally, as all employees do, the Plaintiffs would take days off and would arrive late or leave early but, for the most part, they kept the schedule described

above. Accordingly, the Plaintiffs typically worked about 58 hours per week with occasional fluctuations.

67.     During the course of the Plaintiffs' employment by the Defendants, the Defendants would at times track their hours using a computerized system but, at other times, the Defendants would not track the Plaintiffs' hours at all. In particular, the Plaintiffs recall that the Defendants often tracked their hours when they worked at the 1215 S. Central Avenue location, but not when they worked at other locations.

68.     The Defendants failed and refused to pay the Plaintiffs overtime premiums for the hours they worked in excess of 40 each week.

69.     The Defendants often failed to pay the Plaintiffs at a rate not less than the federal minimum wage, the Illinois minimum wage and, as applicable, the Chicago minimum wage.

### The Defendants' Scheme to Avoid Paying Overtime Compensation

70.     For the most part, the Defendants paid the Plaintiffs in cash instead of by check.

71.     The Defendants paid many, if not most, of the Collective Class members in cash instead of by check.

72.     The Defendants often failed to accurately log and underreported the Plaintiffs' work time whenever they did, in fact, log it.

73.     The Defendants failed to provide the Plaintiffs with pay stubs that would their hourly rates and the number of hours worked each week.

74.     During the course of their employment by the Defendants, the Plaintiffs: a) were not paid a set salary; b) were not paid by the hour; c) were not paid what is called

13

"book time" in the automotive repair industry; d) were not paid by the piece; e) were not paid by the day, week, month or any other such period; and f) were not paid any kind of true commissions.

75.     Rather, the Defendants paid the Plaintiffs in a highly irregular way: every Saturday, the Defendants would divide the gross receipts for that Saturday, at the respective location/s at which each Plaintiff might then be working, among the workers who happened to be working at that location on that Saturday.

76.     The Defendants would usually divide the money evenly among the workers, as described above; however, if a particular location made an unusually large amount of money on any given Saturday, the Defendants would then keep a portion of it for themselves before dividing it among the workers; the portion retained by the Defendants was arbitrary and not based upon any kind of percentage or formula.

77.     Thus, during the course of their employment by the Defendants, the Plaintiff pay was completely arbitrary and not tied to the number of hours worked; it also did not constitute any kind of commission in that, among other things, the Defendants did not pay the Plaintiffs a percentage of profits but, instead, arbitrarily paid them whatever they chose to pay them (by virtue of the fact that the Defendants would withhold arbitrary amounts from the gross receipts).

78.     The Plaintiffs' pay would fluctuate widely between about $300.00 per week on the low end, and about $800.00 per week on the high end – even though the Plaintiffs worked, with rare exception, about the same number of hours each week during their employment.

14

79.     On occasion, the Plaintiffs did observe the Defendants pay some of their employees by check.

80.     Upon information and belief, the Defendants paid a minority of their employees by check (the "Paycheck Employees"); the Defendants did so in order to further their improper payroll scheme.  For example, if an employee who was paid in cash were to complain or file a claim for unpaid wages, the Defendants could then point to payroll records of the Paycheck Employees in order to assert or imply that the complaining employee never worked for the Defendants.  In short the Defendants would have no payroll records for the complaining employee who was paid in cash (like the Plaintiffs and the Collective Class members were), but would have records for the Paycheck Employees.

81.     During the course of their employment, the Plaintiffs were unaware of their rights under the FLSA, the IMWL and the CMWO; upon information and belief, the Collective Class members were and are unaware of their rights under the FLSA, the IMWL and the CMWO.

82.     The Defendants failed to display a poster, or any other literature, that would have apprised the Plaintiffs and the Collective Class members of their rights under the FLSA, the IMWL and the CMWO and, as a result, the statutes of limitation applicable to the claims alleged herein have been tolled under the doctrine announced in *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir. 1978) (see also *Chavez v. Don Stoltzner Mason Contr., Inc.*, 2010 U.S. Dist. LEXIS 33289 (Aspen, J.), *Cisneros v. Jinny Beauty Supply Co., Inc.*, 2004 U.S. Dist. LEXIS 2094 (Grady, J.) and *Cortez v. Medina's Landscaping*, 2002 U.S. Dist. LEXIS 18831 (Gottschall, J.).

83.     The Defendants used the methods described above as part of their scheme to avoid paying the Plaintiffs and the Collective Class members overtime compensation at the rates required by law.

84.     The Defendants also used the methods described above as part of their scheme to avoid paying the Plaintiffs and the Collective Class members wages at rates not less than the minimum rates required by applicable law.

85.     During the course of the Plaintiffs' employment, the Defendants employed approximately 30 to 40 individuals who performed work that was the same as, or similar to, the work that the Plaintiffs' performed and whom the Defendants paid in a manner that was the same as, or similar to, the manner in which the Plaintiffs were paid; these 30 to 40 individuals comprise the Collective Class.

86.     Upon information and belief, the Defendants continue the same, or similar, improper payroll practices through the present day.

## COUNT I
### (Violation of the FLSA)

87.     The Plaintiffs re-allege the foregoing paragraphs.

88.     Among other ways, the Defendants violated the FLSA by:

    a.  failing to pay the Plaintiffs at rates not less than one and one-half times their respective, regular, hourly rates for the overtime hours (in excess of 40 in any given week) they worked;

    b.  failing to pay the Plaintiffs at rates not less than the federal minimum wage;

    c.  failing to provide the Plaintiffs with pay stubs that accurately listed their respective, hourly wage rates and the number of hours they worked each week;

    d. failing to accurately record the number of hours that the Plaintiffs worked each week; and

    e. failing to hang and display a poster in a prominent location accessible to the Plaintiffs, which poster would have informed the Plaintiffs of their rights under the FLSA.

89. Among other ways, the Defendants also violated, and continue to violate, the FLSA by:

    a. failing to pay the Collective Class members at rates not less than one and one-half times their respective, regular, hourly rates for the overtime hours they worked;

    b. failing to pay the Collective Class members at rates not less than the federal minimum wage;

    c. failing to provide the Collective Class members with pay stubs that accurately listed/list their respective hourly wage rates and the number of hours they worked/work each week;

    d. failing to accurately record the number of hours that the Collective Class members worked/work each week; and

    e. failing to hang and display a poster in a prominent location accessible to the Collective Class members, which poster would have informed the Collective Class members of their rights under the FLSA.

90. The Defendants' violation of the FLSA was willful in that the Defendants were aware or should have been aware of their obligations under the FLSA, but nevertheless attempted to circumvent its provisions.

91. As a direct and proximate result of the Defendants' violation of the FLSA, the Plaintiffs were damaged in that they suffered pecuniary loss.

92. The Defendants failed to take affirmative steps to ascertain their obligations under the FLSA.

WHEREFORE the Plaintiffs, on behalf of themselves and the Collective Class, pray for judgment in their favor and against the Defendants, and each of them, and for the following relief:

A. damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiffs for each hour the plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the plaintiffs at rates not less than one and one-half times their respective, regular, hourly rates (in no case less than one and one-half times the highest, applicable, mandatory minimum rate under the FLSA, the IMWL or the CMWO);

B. damages in an amount equal to the unpaid minimum wages due and owing to the plaintiffs for each hour the plaintiffs worked, but for which the Defendants failed to pay the plaintiffs at rates not less than the federal minimum wage rate;

C. statutory liquidated damages as allowed by the FLSA;

D. pre- and post-judgment interest on all amounts awarded;

E. attorneys' fees, together with costs of suit and collection; and

F. such further relief as may be fair and just in the premises.

## COUNT II
### (Violation of the IMWL)

93.     The Plaintiffs re-allege the foregoing paragraphs.

94.     Any and all Collective Class members who join this action under the "opt-in" procedure set forth in 29 U.S.C. 216(b) will also affirmatively adopt the allegations in this Count II.

95.     Among other ways, the Defendants violated the IMWL by:

a. failing to pay the Plaintiffs at a rate not less than one and one-half times their respective, regular, hourly rates for the overtime hours they worked;

b. failing to pay the Plaintiffs at rates not less than the Illinois minimum wage;

18

    c.  failing to provide the Plaintiffs with pay stubs that accurately listed their respective, hourly wage rate and the number of hours they worked each week;

    d.  failing to accurately record the number of hours that the Plaintiffs worked each week; and

    e.  failing to hang and display a poster in a prominent location accessible to the Plaintiffs, which poster would have informed the Plaintiffs of their rights under the IMWL.

96.    The Defendants were aware or should have been aware of their obligations under the IMWL, but nevertheless attempted to circumvent its provisions.

97.    As a direct and proximate result of the Defendants' violation of the IMWL, the Plaintiffs were damaged in that they suffered pecuniary loss.

98.    The Defendants failed to take affirmative steps to ascertain their obligations under the IMWL.

WHEREFORE the Plaintiffs pray for judgment in their favor and against the Defendants, and each of them, and for the following relief:

    A.  damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiffs for each hour the plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the plaintiffs at rates not less than one and one-half times their respective, regular, hourly rates (in no case less than one and one-half times the highest, applicable, mandatory minimum rate under the IMWL or the CMWO);

    B.  damages in an amount equal to the unpaid minimum wages due and owing to the plaintiffs for each hour the plaintiffs worked, but for which the Defendants failed to pay the plaintiffs at rates not less than the Illinois minimum wage rate;

    C.  statutory punitive damages as allowed by the IMWL;

    D.  pre- and post-judgment interest on all amounts awarded;

    E.  attorneys' fees, together with costs of suit and collection; and

    F.  such further relief as may be fair and just in the premises.

## COUNT III
### (Violation of the CMWO)

99.     The Plaintiffs re-alleges the foregoing paragraphs.

100.    Any and all Collective Class members who join this action under the "opt-in" procedure set forth in 29 U.S.C. 216(b) will also affirmatively adopt the allegations in this Count III.

101.    As set forth above, the Defendants moved employees around from one location to another in the "family of shops" that were owned or controlled by the Auto Repair Business.

102.    Six of the ten locations listed on the Auto Repair Business's website are located within Chicago.

103.    Upon information and belief, the Plaintiffs and the Collective Class members were allowed to perform work for the Defendants within the City of Chicago for about 50% of their work time or for another, similar percentage to be ascertained through discovery and shown through the evidence.

104.    Among other ways, the Defendants violated the CMWO by:

a.  failing to pay the Plaintiffs at a rate not less than one and one-half times their respective, regular, hourly rates for the overtime hours they worked;

b.  failing to pay the Plaintiffs at a rate not less than the applicable, Chicago minimum wage rate;

c.  failing to provide the Plaintiffs with pay stubs that accurately listed their respective, hourly wage rates and the respective number of hours they worked each week;

d.  failing to accurately record the number of hours that the Plaintiffs worked each week; and

20

e. failing to hang and display a poster in a prominent location accessible to the Plaintiffs, which poster would have informed the Plaintiffs of their rights under the CMWO.

105. The Defendants were aware or should have been aware of their obligations under the CMWO, but nevertheless attempted to circumvent its provisions.

106. As a direct and proximate result of the Defendants' violation of the CMWO, the Plaintiffs were damaged in that they suffered pecuniary loss.

107. The Defendants failed to take affirmative steps to ascertain their obligations under the CMWO.

WHEREFORE the Plaintiffs pray for judgment in their favor and against the Defendants, and each of them, and for the following relief:

A. damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiffs for each hour the Plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiffs at a rate not less than one and one-half times their regular, hourly rate (in no case less than one and one-half times the CMWO's mandatory minimum rate);

B. damages in an amount equal to the unpaid minimum wages due and owing to the Plaintiffs for each hour the Defendants failed to pay the Plaintiffs at a rate not less than the applicable, Chicago minimum wage rate;

C. treble damages as allowed by the CMWO;

D. pre- and post-judgment interest on all amounts awarded;

E. attorneys' fees, together with costs of suit and collection; and

F. such further relief as may be fair and just in the premises.

## JURY DEMAND

The Plaintiffs demand a trial by jury of all issues set forth herein that are capable of

being tried by a jury.

Respectfully submitted,

/s/Paul Luka
Attorney for Plaintiffs

Paul Luka
paul@mendozalaw.net
ALEX MENDOZA LAW, P.C.
120 S. State Street, Suite 400
Chicago, IL 60603
(312) 508-6010 (voice *and* fax)

# EXHIBIT
# A

## CONSENT TO BE A PARTY PLAINTIFF

The undersigned hereby authorizes and engages Mendoza Law, P.C. to pursue his/her claims for unpaid wages, and other relief, against:

AZTECAS MUFFLER & BRAKES; OSCAR MARTINEZ ,

and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employer/s"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employer/s on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

Signature

IRVING ADRIAN HERRERA
Print Name

## CONSENT TO BE A PARTY PLAINTIFF

The undersigned hereby authorizes and engages Mendoza Law, P.C. to pursue his/her claims for unpaid wages, and other relief, against:

AZTECAS MUFFLER & BRAKES ; OSCAR MARTINEZ

and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employer/s"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employer/s on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

_____
Signature

MARIO HERRERA
_____
Print Name

## CONSENT TO BE A PARTY PLAINTIFF

The undersigned hereby authorizes and engages Mendoza Law, P.C. to pursue his/her claims for unpaid wages, and other relief, against:

AZTECAS MUFFLER & BRAKES ; OSCAR MARTINEZ

and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employer/s"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employer/s on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

_____
Signature


ALEXANDER GARCIA
Print Name